May Term,
1856.

THE LAW-
RENCEBURGH
AND UPPER
MISSISSIPPI
RAILROAD
COMPANY
v.
MONTGOM-
ERY.

---

THE LAWRENCEBURGH AND UPPER MISSISSIPPI RAILROAD
COMPANY *v.* MONTGOMERY.

In a case where the evidence was conflicting, the defendants asked the Court to instruct the jury that the law of the case, on the evidence, was in favor of the defendants, and that the jury should so find;—also that if the jury believed the testimony of *A.* and *B.* (whose evidence did not agree with that of other witnesses) they must find for the defendants. *Held*, that the instructions were properly refused.

Action against a railroad company for an injury done to the plaintiff, while traveling on a gravel train of the company. The defendants asked the Court to instruct the jury as follows: A railroad company is not liable for an injury which may happen to a person who takes passage on a train engaged in transporting gravel, and not engaged in carrying passengers. *Held*, that the instruction was correctly refused.

It is not error to refuse an instruction, unless it ought to be given precisely in the terms prayed.

Where the principle contained in an instruction which has been refused, is embraced in instructions given, the refusal is not error.

In a suit against a railroad company by a passenger, for an injury occasioned by a collision, it is not sufficient for the company to show that the plaintiff was acting at the time in disobedience of a proper order to secure his safety: it should also appear that the injury was occasioned by such disobedience.

*Thursday,
May 29.*

APPEAL from the *Dearborn* Circuit Court.

GOOKINS, J.—Action by *Montgomery*, who claimed to be a passenger upon a car of the defendants, for an injury

occasioned by a collision. The plaintiff obtained a verdict and judgment in the Circuit Court. The corporation appeals.

May Term,
1856.

THE LAW-
RENCEBURGH
AND UPPER
MISSISSIPPI
RAILROAD
COMPANY
v.
MONTGOM-
ERY.

The complaint alleges that the defendants were the owners of a car used and employed by them in carrying passengers over their road, into which they received the plaintiff as a passenger, for certain fare; that by reason of the want of care, and the unskilfulness of the defendants, said car came in collision with another car of the defendants coming in an opposite direction, whereby the plaintiff was injured.

The defendants answered, that at the time of the injury, the plaintiff was wrongfully, without the leave and against the will of the defendants, on the defendants' cars used in putting gravel on the road, which were not used for conveying passengers, and were never so used with the defendants' consent; that the plaintiff knew he was wrongfully on said cars; that while so riding, the train came casually in contact with another train of the defendants, used for the same purpose, by which the plaintiff was injured, without the fault of the defendants.

Reply, that the plaintiff was not wrongfully on the cars; that he took passage thereon with the consent and permission of the engineer who had charge of the locomotive and train; that he paid the engineer the fare he demanded of him; and while so lawfully on the train, he was injured.

A bill of exceptions contains all the evidence, which tends to establish the following facts: That the defendants, an incorporated company, were engaged in the construction of a railway, a portion of which, at the time of the injury complained of, was in running order, and a passenger train had been passing daily for about twenty-five or thirty days over that part of the road where the collision occurred; that in constructing their road, a gravel train was in use, and there was also a train for carrying freight running upon the road. The gravel train was run without a time-table, which is usual. The engineer had instructions simply to keep out of the way of other trains. On the day of the accident, the plaintiff applied to the

May Term,
1856.

THE LAW-
RENCEBURGH
AND UPPER
MISSISSIPPI
RAILROAD
COMPANY
v.
MONTGOM-
ERY.

engineer who had charge of the gravel train, for permission to go upon it a short distance. He was permitted to go, and paid his fare to the engineer. While passing around a curve, the gravel train came in collision with a freight train of the defendants, in consequence of which the plaintiff was thrown out and injured. Before the passenger cars were placed on the road, many persons were permitted to travel on the construction trains. For a time no fare was charged; but passengers becoming so numerous as to cause some complaint from those in charge of the construction trains, the company caused a temporary car, with seats, to be attached to the train, on which passengers were carried for fare, until the passenger train was put on the road, when it was removed. There was evidence tending further to show, that as soon as the passenger train was put on the road, the workmen in charge of the construction train were forbidden to carry passengers; and that public notice was given of the order, by posting up copies of it, signed by the president of the company; but that they still carried them, sometimes collecting fare and sometimes not. Whether they were carried with or without the knowledge of the officers having the general superintendence, is left by the evidence in some doubt. *Sprague*, the chief engineer and superintendent, testifies that he gave orders to the engineers and conductors not to transport passengers on such trains; and further, that if they were carried, such persons were to be notified that they traveled at their own risk. *Lunger*, the engineer of the gravel train, testifies that he informed the plaintiff of these orders when he applied to him for leave to go on the train, but the plaintiff insisting, he permitted him to go. The evidence does not show that the company had notice that fare was taken from such passengers, but tends to the contrary. *Lunger* testifies that when the plaintiff came upon the train, he directed him to remain on the tender; but that he left it without his knowledge, and went upon a gravel car, where he remained until the collision; that the tender was a safer place, the gravel cars being unsuitable to ride upon. The

approaching trains were not in view of each other. A person opposite the curve gave a signal of danger to both trains, when the steam was shut off, the engines reversed, the brakes applied, and every practicable effort made to prevent a collision.

May Term, 1856.

THE LAW-RENCEBURGH AND UPPER MISSISSIPPI RAILROAD COMPANY v. MONTGOM-ERY.

On this évidence the defendant prayed the following instructions to the jury.

1. That the law of the case, on the evidence, is in favor of the defendants, and the jury should find accordingly. This instruction was properly refused. Where there is, as in this case, a conflict of evidence, it is not the province of the Court, but of the jury, to decide upon its weight.

2. If the jury believe the testimony of *Sprague* and *Lunger*, they must find for the defendant. This was correctly refused, for the same reason, and for the further reason, that it tended to draw the minds of the jury away from the testimony of the opposing witnesses, to that of *Sprague* and *Lunger* alone.

3. A railroad company is not liable for an injury which may happen to a person who takes passage on a train engaged in transporting gravel, and not engaged in carrying passengers. This instruction was too broad. In the case of *Fitzpatrick* v. *The New-Albany and Salem Railroad Company*, *ante*, p. 436, we decide that a person riding upon a gravel train might, under certain circumstances, recover for an injury occasioned by a collision. Besides, the last qualification of the instruction was liable to mislead the jury, and did not apply to the case. The *general* business of the train was to convey gravel, but it did carry passengers also, as was proved, in a number of instances. It is not error to refuse an instruction, unless it ought to be given precisely in the terms prayed.

4. If the jury believe that the plaintiff took passage on a train which at the time was engaged in carrying gravel, after being informed that it was contrary to the rules of the company to carry passengers on such trains, he can not recover. The principle of this instruction was fully covered by those given by the Court. Supposing it to be correct in law, a refusal to give it can not, therefore, be

May Term,
1856.

THE LAW-
RENCEBURGH
AND UPPER
MISSISSIPPI
RAILROAD
COMPANY
v.
MONTGOM-
ERY.

assigned for error. The sixth instruction is in the same predicament, and need not be further noticed.

The fifth instruction refused was as follows: If the plaintiff was permitted by *Lunger*, the engineer having charge of the train, to ride on the tender, and was expressly told not to get on the cars, but went there notwithstanding such order, and remained there until the accident, he can not recover. This instruction was strictly applicable to the case. It was testified that the plaintiff conducted himself in the manner supposed by the instruction; but we do not think that as a matter of law, the mere fact of giving such an order, and a disregard of it by the plaintiff, were sufficient to defeat a recovery. The cases nearest approaching to it that have fallen under our notice, are *Laing* v. *Colder*, 8 Barr 479, and *The Galena, &c., Railroad Company* v. *Yarwood*, 15 Ill. 468. In the first case, a passenger having been repeatedly warned of the danger, allowed his hand to extend outside the window, in consequence of which, in passing a bridge, his arm was broken. The Supreme Court of *Pennsylvania* held that he could not recover for the injury. Warning was given in a loud voice as the train approached the bridge. The other case more nearly resembles the present. The plaintiff applied for a passage at a way station. The passenger cars being full, he was told he could go if he would take passage in the baggage car, which he did. He engaged in a rude scuffle with his traveling companions, and ran through the train to the rear car. While there that car and the one preceding it were partly thrown from the track, which so alarmed him that he leaped from the car, by which his leg was broken. The baggage car, in which he agreed to go, was not thrown from the track. It was held that the cause of alarm reasonably justified the leap; but that, as he brought on the occasion for it by his own misconduct, he could not recover.

A railroad company may and ought to make reasonable rules for conducting their business, and all persons ought to be required to comply with them; but, although a passenger may have left the place assigned him, he is not

necessarily more exposed to danger, than if he had re-
mained.   Suppose, as occurred on the *New-Haven* and
*Missouri* roads, a whole train were to fall through a bridge,
can it be said to follow as a legal consequence that be-
cause a passenger may have left the place assigned him,
he can maintain no action for an injury, without regard to
the question whether he has increased his danger by so
doing?   We think not.   The evidence does not inform us
what part of this train, or whether any, was thrown from
the track.   It should have been left to the jury to say
whether the plaintiff brought the injury upon himself by
leaving one part of the train and going to another, instead
of laying down the rule, that if he did so, he could not
recover.   We conclude that the instruction was rightly
refused, and that the judgment must be affirmed.

DAVISON, J., was absent.

*Per Curiam.*—The judgment is affirmed, with 5 per
cent. damages and costs.

*J. Ryman,* for the appellants.