[No. 2333. Decided December 7, 1896.]

HARRY BAILEY, *Respondent*, v. TACOMA TRACTION
COMPANY, *Appellant*.

NEGLIGENCE — OPERATION OF ELECTRIC CARS — INJURY TO PASSENGER
— CONTRIBUTORY NEGLIGENCE — SPECIAL INTERROGATORIES.

It is negligence on the part of a street railway company to so
schedule the trips of its electric cars as to require a car from a
branch line to come upon the main line and pass through a certain
switch within two minutes after another car should have passed
there going in the opposite direction, when no provision has been
made by signal, flag, register or otherwise to show whether or not
the car first due has passed through the switch.

A passenger upon an electric street car, who has been injured
through the collision of two cars, is not chargeable with contribu-
tory negligence *per se* by reason of his occupying a stool upon the
front platform of the car, when his being there is not in disobedi-

ence of any order or rule of the company, but in reality with its sanction, since it had become a custom of this passenger and of others to ride upon the platform, and the conductor had been in the habit of collecting fares from passengers riding there.

The question of the submission to the jury of special interrogatories is addressed to the discretion of the trial court, and is not reviewable on appeal.

Appeal from Superior Court, Pierce County.—Hon. JOHN C. STALLCUP, Judge. Affirmed.

*Doolittle & Fogg*, for appellant.

*M. L. Clifford,* and *Wallace M. Clarke*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an action brought by the respondent against the Tacoma Traction Company, for personal damages caused by the alleged negligence of the appellant in operating its electric street railway cars.

Stripped of all verbiage and unnecessary repetitions, the undisputed facts in the case are about as follows : The appellant owns and operates a system of street railways. The system is operated by electricity. The cars start on single trunk lines at a point near the center of the city of Tacoma, running southward a distance of about four miles to a point called Hosmer Junction, where the track branches, one line running westward to Edison, a distance of two miles, the other running southward a distance of about twelve miles to Puyallup. The switch at Hosmer Junction was always open to the Edison car, but the Puyallup car had to open and close it when passing the junction either way. By the time schedule in force when the accident occurred, the car going to Edison should have passed the junction at 7:23 A. M.,

and the car coming to Tacoma from Puyallup would have passed the same point at 7:25 A. M., but two minutes later. On the 4th day of October, 1895, respondent got on the Puyallup car at Fern Hill for the purpose of going to Tacoma. The morning was very foggy. The respondent was smoking and went on the front platform of the car, seating himself on the stool provided for the motorman. He sat with his back against the front end of the car. After the car had passed the junction at Hosmer and gone about four hundred feet, it met the Edison car coming at a higher rate of speed than the Puyallup car was moving at, and the two ran into each other with great force. In the collision respondent received the injuries to recover damages for which this suit was brought.

It is conceded that there was no provision made by signal, flag, register or otherwise by which the car coming through the switch on the main track on its way from Puyallup to Tacoma could know whether or not the Edison car, going in the opposite direction, had passed that point. We think this is sufficient to establish the fact of negligence on the part of the appellant without further discussing it.

On the trial of the cause below the jury rendered a verdict in favor of the respondent for $3,000. And right here we may say, in answer to appellant's contention that the verdict was excessive, that, under the proofs of injury, we are not able to conclude that the verdict was rendered through passion or prejudice, or from any other motive than a desire to render equivalent damages for the injuries sustained.

The greater part of appellant's very long brief in this case is devoted to a discussion of the proposition that where the plaintiff in an action for personal damages is *per se* guilty of contributory negligence, he

cannot recover; and the further proposition, in aid of his motion for a non-suit, that where the testimony is not sufficient to sustain a verdict, it is the duty of the court to grant a non-suit. It would seem that it is scarcely necessary to discuss these propositions at any length, inasmuch as they are conceded by all courts where the doctrine of comparative negligence does not prevail, and they are especially conceded by the respondent. On page 7 of his brief he says :

"Through fifty-three pages of their brief, from page 39 to 92, inclusive, appellant's attorneys argue substantially, the proposition that contributory negligence defeats an action for damages for personal injuries; stating it in various forms and phraseology, and citing a very great number of cases. This legal proposition is distinctly admitted by the respondent."

So we will not further notice the discussion or the authorities bearing on these points.

The only real question there is in this case is whether the acts of the respondent, as shown by the testimony, constituted contributory negligence *per se*, or whether such acts, if proven, could, as a matter of law, be said to constitute contributory negligence; and one proposition argued at great length by appellant, viz., that contributory negligence is a mixed question of law and fact, will not be disputed. The authorities cited by appellant to sustain the doctrine that the facts in this particular case constitute contributory negligence *per se* are so interwoven and indiscriminately mixed with the authorities which are cited to prove the propositions which we have mentioned above and which are conceded, that it has been with the greatest difficulty and labor that the court has segregated them without investigating the hundreds of cases which are cited in the brief and which it

would be impossible for the court to investigate in detail. Attempting, however, to select the strongest cases cited by appellant in support of its contention, we will specially notice the following :

Commencing with *Gavett v. Manchester, etc., R. R. Co.*, 16 Gray, 501 (77 Am. Dec. 422), which is claimed by appellant to be a case which decided the principles involved in this case, there it was decided that, "in an action to recover for personal injuries, if the facts are undisputed and fail to show that the plaintiff was in the exercise of due and reasonable care at the time of receiving the injuries, it is the duty of the court to instruct the jury that he cannot recover." It will be observed that in the State of Massachusetts it was necessary to prove the absence of contributory negligence, and that doctrine obtains in a great many of the states from which cases are cited by the appellant; but in this state the rule is otherwise, the uniform holding of this court having been that contributory negligence is a matter of defense which must be affirmatively shown by the defendant. It was there held that a passenger in a railroad car who, knowing that the train is in motion, goes out of the car and steps upon the platform of the station while the train is still in motion, is so wanting in ordinary care as not to be entitled to maintain an action against the railroad corporation for an injury resulting therefrom. This case was where a woman had been called at the station of Salem, was slow about getting to the door to make her exit from the car, and after the car had started, undertook to swing herself on to the platform, was whirled around and thrown in between the platform and the car and injured. It is not a case which bears upon the facts in this case at all, as far as we can see, even conceding the justice of that decision as ap-

plied to the facts in that particular case. Again, this
was a steam railroad case, and it might be conceded
at the outset that the weight of authority is that it is
negligence for a passenger to stand on the platform of
a steam railway car while it is in motion, although
many of the cases go no further than to hold that it
is not negligence *per se*, but a question of negligence
to be submitted to the jury.

*Lawrenceburgh, etc., R .R. Co. v. Montgomery*, 7 Ind.
474, seems to involve principally the question of
whether a railroad company is liable for an injury
which may happen to a person who takes passage on
a train engaged in transporting gravel and not engaged
in carrying passengers; but that case also decides that,
in a suit against a railroad company, by a passenger,
for an injury occasioned by a collision, it is not suffi-
cient for the company to show that the plaintiff was
acting at the time in disobedience to a proper order
to secure his safety; it must also appear that the in-
jury was occasioned by such disobedience; and the
court concludes its opinion in that case by saying :

" The evidence does not inform us what part of this
train, or whether any, was thrown from the track.   It
should have been left to the jury to say whether the
plaintiff brought the injury on himself by leaving one
part of the train and going to another, instead of lay-
ing down the rule, that if he did so, he could not
recover."

Substantially holding that the question of contribu-
tory negligence in that case was a question of fact to
be submitted to the jury and not a question of law to
be determined by the court.   We might state, how-
ever, that in the case at bar not only was the respon-
dent not acting in disobedience of any order or rule
of the company, but he was upon the platform at least

by the sanction of the company, for the undisputed testimony shows that he had been accustomed for three or four years prior to the accident to riding on the platform, that it was the habit of others to ride upon the platform, and that it had become a custom by assent of the car company; that no order or rule against passengers standing on the platform had been posted or published on the car or elsewhere; that the conductor had been in the habit of taking up the fares of passengers on the platform, and that he had that morning taken the fare of this passenger while he was upon the platform. It seems to us that the case above cited is scarcely in point here.

*Railroad Co. v. Jones,* 95 U. S. 439, is another case of a steam railway, and in that case the plaintiff, who was working for the company, rode home from work on the pilot or bumper of the locomotive, when the train, in passing through a tunnel, collided with a car standing on the track, and he was injured. It was very properly held that such an act was contributory negligence, especially in view of the fact that the plaintiff had been warned against riding on the pilot and had been forbidden to do so.

The case of *Higgins v. Hannibal, etc., R. R. Co.,* 36 Mo. 418, is where a woman left the seats in a regular passenger car and repaired to the baggage car, where she was injured. In the state of Missouri at that time there was a statute providing that, " in case any passenger on any railroad shall be injured while on the platform of a car of any baggage, wood or freight car, in violation of the printed regulations of the company posted up at the time in a conspicuous place inside of its passenger cars then in its train, such company shall not be liable for the injury," etc. This statute is cited by the court and is the pivotal point on which

this case was decided, as it is stated by the court in its opinion that the evidence tended to show that the plaintiff was well acquainted with these regulations. This was also a steam railway company.

*Francisco v. Troy, etc., R. R. Co.*, 78 Hun, 13 (29 N. Y. Supp. 247), held that, upon the trial of an action brought to recover damages for personal injuries, the absence of contributory negligence on the part of the plaintiff could not be presumed, but that it must be proved; and the verdict of the jury cannot stand upon conjecture, however plausible the same may be, if the plaintiff cannot furnish the requisite evidence to sustain the affirmative burden cast upon him by law. As above remarked, this announcement is opposed to the established rule in this state. It does not appear plainly from the report of that case how the plaintiff was injured, but it does appear that the conductor had given the plaintiff permission to go to the platform. The court, however, finds that no permission had been given him to stand on the steps of the platform, and that he was standing on the steps without authority; that such a place was dangerous, and that the plaintiff must have known that it was dangerous when sweeping around curves; so we take it that the passenger was thrown from the car. The court, however, seems to indicate that the standing on the platform is not negligence *per se*, or negligence at all, for it says in its opinion :

" Nor do we think that the defendant assumed any additional risk by permitting the plaintiff to stand on the front platform of the car. The rule is quite universal on railroads not to permit passengers to smoke in cars adapted to all classes of passengers, and, while there is no evidence upon this subject, it is reasonable to infer that the permission of the conductor to the

plaintiff to smoke on the platform was in reference to that rule or custom."

We hardly think that the facts in that case, or anything that is said in the opinion, could be held to sustain appellant's contention that it is negligence *per se* to stand on the front platform of a street railway car.

*Marion Street R. R. Co. v. Shaffer*, 9 Ind. App. 486 (36 N. E. 861), is a very short case and simply decides, without any argument, that it is not contributory negligence for a passenger on a street car to remain on a platform when there is no room inside. There is no indication that the court would have held that it was contributory negligence *per se*, even if there had been room inside, for it cites *Nolan v. Railroad Co.*, 87 N. Y. 68 (41 Am. Rep. 345), and other cases, where the rule is not restricted to cases where the facts show that there was no room inside for the passenger to ride. In this case, however, the question of contributory negligence was submitted to the jury. The jury found that the plaintiff was not negligent, and judgment was rendered for the plaintiff. This judgment was affirmed by the supreme court, and, in concluding its very brief opinion, the court says :

"In this case there was evidence which tended to show that the car was crowded at the time, and that there was no room for the appellee on the inside of the car. True, the evidence on this point was conflicting, and perhaps the weight of it tended to establish the contrary. Still, this court will not weigh the evidence under such circumstances. Judgment affirmed, at costs of appellant."

The case of *Clark v. Eighth Ave. R. R. Co.*, 36 N. Y. 135 (93 Am. Dec. 495), which is claimed to be parallel

to the case at bar, was where the doctrine prevailed that the absence of contributory negligence must be proven; and the court held that, under the circumstances of that case, it could not say that the acts proven were not contributory negligence on the part of the plaintiff. That case, however, is distinguished in *Nolan v. Railroad Co., supra,* which will be noticed hereafter in support of respondent's view.

*Todd v. Old Colony, etc., R. R. Co.,* 3 Allen, 18, is a case where it was held that a traveler in a railway car cannot recover damages against the railway company for a personal injury sustained wholly or in part by reason of allowing his arm or his elbow to be outside of the window. As a matter of course, if a passenger absolutely refuses to take notice of the common perils incident to travel, such as the fact that if his arm is put through the window of a car it is liable to be injured by trees or brush or bridge supports, or things of that kind, and is injured in the exercise of such foolhardy and foolish acts, we think there is no court but what would say that he was guilty of negligence *per se,* and that it would be wrong to hold a company responsible for damages sustained by him. But riding on the platform of a street railway car is altogether another proposition. Collisions are not expected by passengers. They have a right to presume that the operators of the road, who have the management and control of their cars, will protect them from collisions; and if a passenger should be held by the law to presume that a collision might occur, it might be very well held that he would be guilty of contributory negligence, if he entered the car as a passenger at all.

*Hickey v. Boston & Lowell R. R. Co.,* 14 Allen, 429, is where a person stepped off of the platform of the smoking car on to the front platform of the passenger

car, after the engine and the smoking car had been uncoupled from the rest of the passenger train, and the car coming down the track unattended by the engine met with an accident and the passenger was injured. Under such circumstances it was held that he was guilty of contributory negligence. We think it is not a case in point.

In *Sweeny v. Old Colony, etc., R. R. Co.*, 10 Allen, 368, it was held that if a railroad company had made a private crossing over it tracks at grade in a city, and allowed the public to use it as a highway, and stationed a flagman there to prevent persons from undertaking to cross when there was danger, it may be held liable for damages to a person who is induced to cross by a signal from the flagman that it is safe, and is injured by a collision which occurs through the flagman's carelessness. We have examined this case particularly and fail to see in what respect it supports the contention of the appellant.

And it will be seen that none of these cases support appellant's view. It may be that cases are cited in the brief which do, but, as we have before said, we have been unable, without an investigation of all the cases cited, so many of which are manifestly not in point here, to find them. On the other hand, we might well stop with the decision of this court in the case of *Muldoon v. Seattle City Street Ry Co.*, 7 Wash. 528 (35 Pac. 422, 38 Am. St. Rep. 901), where it was held that it was not negligence *per se* for a passenger to stand upon the front platform of the trail car in a moving cable train, in the absence of any rule of the company against it, and where it has been the custom of passengers to occupy that position. This court recognized the fact that there was more liability to accidents by standing on the platform

of cars that were propelled by powerful agencies than of those moved by horse power; but notwithstanding that recognition, it laid down the rule above announced, for it said:

"Doubtless there is more liability that accidents will occur where the car is propelled by cable than where horses are used, but common experience has not. discriminated between the two to the extent of changing the rule. In most cases of this class the question of contributory negligence is one for the jury;" citing *Wills v. Lynn, etc., R. R. Co.* 129 Mass. 351, and *Nolan v. Brooklyn, etc., Ry. Co.* 87 N. Y. 63.

And it may be well said here that common experience has not discriminated between a car propelled by a cable and one propelled by electricity to the extent of changing the rule; for while it is probably a fact that electric cars are run at a greater rate of speed than cable cars, yet we think experience shows that accidents are as frequent upon the cable cars as upon the electric cars, owing, probably, to the lack of facilities to easily control the cable cars which exist on the electric cars. We will however notice the cases upon which the decision in *Muldoon v. Seattle City Street Ry. Co., supra,* was based.

In *Wills v Lynn, etc., R. R. Co.* 129 Mass. 351, under the doctrine before mentioned in regard to the necessity of proving want of contributory negligence, the court directed a verdict for the defendant on the ground that the plaintiff had not offered any evidence sufficient to warrant the jury in finding that her intestate was exercising due care at the time of the accident; and this action of the court was affirmed by the supreme court of Massachusetts. There, the burden being upon the plaintiff to prove that her deceased husband was free from negligence contributing to the injury

which he received from the acts of the defendant corporation, the judgment of the court was evidently right under the circumstances of that case. The circumstances showed, as the court says, from uncontradicted evidence, that the plaintiff's intestate got on the front platform of defendant's car and remained standing in that place until the car approached a draw bridge on the road, when he sat down on the platform with his feet on the step. He was told by the driver of the car that he had better not sit in that place as it was against the rules of the company and unsafe. He continued, however, to occupy his sitting position on the side of the platform until he fell from the car after it had passed the bridge. The court found that there were notices posted on the under side of the roof of the platforms of this car, that all persons were forbidden by order of the directors to be on the front platform, and that the company would not be responsible for the safety of passengers while there. It was held that the street railway company has the right to make all reasonable regulations for the safety of passengers; that a rule prohibiting passengers from riding on the front platform is a reasonable regulation, and one who knowingly violates it cannot be said to be free from negligence, if the act contributes to his injury. The court, however, stated that the question in most cases was one which should be submitted to the jury.

An investigation of a great majority of the cases cited by appellant, which we have not specially mentioned, where the plaintiff was held to be guilty of contributory negligence, shows that they are cases where he was held to have taken notice of the perils incident to the position which he occupied. For instance, if he placed himself in a position on the plat-

form, where the danger of being thrown from the car was increased, he could not hold the company responsible for being so thrown from the car; and most of them are cases of this character, where the plaintiff, by some sudden jolt or lurch of the cars, was thrown from his exposed position. But in the case at bar no element of this kind enters. A great deal is said, and often repeated, by the appellant in its brief, concerning the fact that the respondent perched himself upon a stool which was placed on the front of the car for the use of the motorman. But the injury complained of was not sustained by any peril flowing from the particular position on the stool. The testimony shows that a gate on the side of the car on the platform next to where the respondent sat was fastened, so that he could not be thrown off the car on that side. Other passengers stood between him and the gate on the other side. And the fact was, that he was not thrown off at all, but was injured on the stool where he sat; while another passenger, who was not on the stool but stood on the platform by his side, was killed in the accident. So that we think all the discussion concerning the stool may be eliminated from the case.

The other case cited by this court in *Muldoon v. Ry. Co., supra,* viz., *Nolan v. Brooklyn, etc., Ry. Co.* 87 N. Y. 63 (41 Am. Rep. 345) is squarely in point, so far as the circumstances are concerned, in this case, excepting that it involved a horse car instead of an electric railway car; and with the further exception that plaintiff's peril was more or less incident to his position, and one which a reasonable person might be presumed to contemplate. Plaintiff took passage on defendant's street cars, and there were vacant seats inside. He rode upon the platform smoking, because, as he testified, it was the custom of the line to permit smoking there.

While so riding the conductor took his fare and the driver suddenly whipped one of his horses, which plunged under the blows, occasioning a jar which, coming without warning, threw plaintiff off the car. In an action to recover damages the court held that the evidence was sufficient to justify the submission of the question as to negligence on the part of the defendant and contributory negligence on the part of the plaintiff to the jury. This case, as the one at bar, came up on a motion for a non-suit, and the court said:

"It is further claimed that no negligence of the defendant was shown. It must be freely confessed that the evidence, taken all together, is very unsatisfactory; but that is not the question here. It comes up in the form of a motion for a non-suit which was denied, and that ruling must be sustained where the evidence is conflicting and the inferences to be drawn are doubtful."

This case, while deciding as we have indicated, distinguishes many of the cases cited by the appellant in the case at bar, notably *Clark v. Eighth Ave., R. R. Co.*, *supra*, and *Gavett v. Manchester, etc., R. R. Co.*, *supra*.

In *Seigel v. Eisen Bros.* 41 Cal. 109, it was held that the fact that the plaintiff was standing on the rear platform of a street car with his hand on the railing, when his hand was injured by defendant's dray as it passed the rear of the car, was not, as a matter of law, such negligence as contributed to the injury.

In *Messel v. Lynn, etc., R. R. Co.* 8 Allen, 234, it was held that the riding upon the outside platform of a car was not such a want of ordinary care as to prevent a recovery for an injury sustained by being thrown therefrom.

*Archer v. Ft. Wayne, etc., Ry. Co.* 87 Mich. 101. (49

N. W. 488), decided that riding upon a platform was not *per se* negligence, citing *Upham v. Ry. Co.* 85 Mich. 12 (48 N. W. 199), where it was held that it was within the power of street railway companies to prohibit passengers from riding upon the platforms of the cars, or to give notice that those who ride there must do so at their own risk, or to limit the number of passengers which each car shall carry and require them to ride inside of the cars; and that until they adopt some such regulations and notify the public, it is but reasonable to hold them liable for injuries resulting from their own negligent acts to their patrons who were themselves in the exercise of reasonable care, whether riding upon the platforms or within the cars, and the court in its opinion in that case, in discussing this proposition, very pertinently says:

"In the presence of the fact that passengers are permitted to ride upon these platforms constantly, can courts hold them to be dangerous *per se?* If the railroad companies considered them dangerous places, would they not take some means to notify passengers not to ride there, or to inform them that they did so at their own risk? It is certainly reasonable to presume that they would. That they do not consider them dangerous is further apparent from the fact that, when their cars are full, they stop them to take on more passengers, and thus invite them to ride upon the platforms. This appears to be their constant custom. It is evident that the public do not consider these platforms places of danger from the fact of their constant use. It is therefore difficult to see upon what reason it can be held that they are dangerous, and that persons who ride there assume all the risks and thereby relieve such companies from all liability except for gross, wilful and wanton misconduct."

In *Maguire v. Middlesex R. R. Co.* 115 Mass. 239, it was held specifically that standing on the front plat-

form of a horse car, when there is room inside, is not of itself conclusive evidence that the person injured by the negligence of the driver of the car was not in the exercise of due care.

*Fleck v. Union Ry. Co.* 134 Mass. 480, is a case where a passenger in a street car left his seat and sat upon the rear platform upon which there was an accumulation of ice, rendering the platform slippery, expecting that the car would stop so that he could alight, and neglected to take hold of the rail. The car jolted and he was thrown off. It was held that the question of whether he was guilty of such negligence as to preclude his maintaining an action for the injuries thereby received was a question of fact for the jury and not of law for the court.

*City Railway Co. v. Lee*, 50 N. J. Law, 435 (14 Atl. 883), is a case where a party sat on the foot board of a car and came in contact with another person standing on the foot board of another car, which met the car in question, and was pulled off and injured. The court in conclusion, says:

"If the question of contributory negligence was raised by the case, it was one for the jury, and there was no error in refusing to non-suit and submitting that question to them."

*Thirteenth, etc., Ry. Co. v. Boudrou*, 92 Pa. St. 475 (37 Am. Rep. 707), is a well considered case. There the plaintiff, who was riding upon the rear platform of a crowded street car, was struck by the pole of a car following and seriously injured. It was held that in riding in this place he was not guilty of contributory negligence; that, although the accident would not have happened if he had not been in that position, yet the position was but a condition, and not the cause, of the injury; and in that case the supreme court of Penn-

sylvania went so far as to hold that the court properly withheld from the jury the question of contributory negligence.

"The learned judge," says the court, "taking a different and correct view, very properly charged that the plaintiff could not recover if the injury resulted from any negligence on his part; that if the jury should find that the plaintiff was negligent in standing on the rear platform, and yet find that the collision could not have happened but for the negligence of the driver of car 14, plaintiff's negligence was remote and not a bar to his recovery. His reasons given, as leading to that conclusion, are unanswerable. The large number of passengers in this city, who voluntarily stand on the platforms, because there is neither sitting nor standing room in the cars, do not, and ought not, anticipate that they will be run over by following cars. Their position has no tendency to induce the driving of one car into another. Whatever the degree of their negligence in riding on the platform, and the risks they take in so doing, every one knows that so long as he remains there, he is in no danger of being run down by a car, unless from its heedless handling. When the plaintiff was struck, his post was a condition, but not a cause of his injury. It neither lessened the speed of the car he was on nor increased that of the other."

That reasoning could very intelligently be applied to the facts in this case. The position of the respondent on the platform really had nothing to do with bringing about the collision, and, as was said by the Pennsylvania court, "was a condition but not a cause" of the accident.

A great deal is said by the appellant concerning the fact that it was a foggy morning and that knowledge of the fact that accidents were liable to occur should be imputed to the passenger. The deduction is that it was the duty of the passenger to look out for col-

lisions and place himself in a position so that he could escape the effect of a collision, either by a favorable position in the car or by leaving the car precipitately. We think there is no force in this reasoning. It is the company's duty to take into consideration the increased perils which are engendered by reason of the condition of the weather, and it must guard against additional hazards. If the passenger must be presumed to anticipate a collision on account of climatic conditions, then he would be guilty of contributory negligence if he traveled in the car at all under such conditions, and was injured while sitting on a seat. He has a right to presume that those who have the management of the operation of the cars will exercise more care, under the conditions existing at the time of this accident as shown by the testimony, than on brighter days and when there is no obstruction by reason of fog or ice or otherwise. It was the most culpable negligence on the part of the appellant to arrange its transportation in such a way that one of these cars was to pass this junction only two minutes ahead of the other, and that there was no way by which the officers of the Puyallup car could tell whether the Edison car had passed the junction or whether it was yet on the road subject to meet the Puyallup car at any time. No passenger should be presumed to presume that the company would be guilty of such unwarranted negligence and utter disregard for the lives and safety of its passengers as to fail to take these ordinary precautions. The respondent in this case had a right to rely upon the vigilance of the appellant in conducting its business so that a collision would be avoided. There was nothing fortuitous or unforeseen occurred; no hidden defects in bridges or displacement of rails by outside agencies, or anything of that character. It

was simply a heedless plunge on to the road between Hosmer Junction and Tacoma, without knowing that the road was clear.  As we have before stated, if, by reason of his position on the platform instead of in the seats in the body of the car, the respondent had been thrown from the car, a peril which would be incident to his position and which he might reasonably be presumed to have taken into consideration when he assumed that position, a very much stronger case of contributory negligence would be presented.  But, under all the authorities, the occupancy of the front platform of the car in the absence of any rule forbidding it by the company, in the face of the custom shown and of the fact that the fare was accepted from the passenger by the conductor while in that position, cannot be held to be contributory negligence *per se*. On the subject of contributory negligence in this class of cases, see, also, *Germantown Passenger Ry. Co. v. Walling*, 97 Pa. St. 55 (39 Am. Rep. 796), and *West Phil. Pass. Ry. Co. v. Gallagher*, 108 Pa. St. 524.

The appellant in its reply brief, noticing these last two cases, says that in neither case did the plaintiff select a high stool to sit upon, but was in a position in which he could look out for himself.  As we have before indicated, the stool which was occupied by the respondent does not affect the question of contributory negligence one way or the other.

Many instructions were offered by the appellant which were refused by the court, and we think properly.  There were fourteen long instructions with a great deal of rehearsal and repetition, and the giving of those asked by the appellant would certainly have tended to confuse the minds of the jurors rather than enlighten them.  Such points as there were in the instructions were on the line of the contention of appel-

lant that the acts proven constituted negligence *per se*. The court properly instructed the jury, the essential part of the instruction, so far as the contested questions in this case are concerned, being:

" You are instructed that the fact that the plaintiff was riding on the front platform of the car at the time of the accident does not in itself make him guilty of contributory negligence; but you are to determine whether or not he was guilty of contributory negligence in the particular instance by all the facts and circumstances connected with the action as shown by the testimony."

This is the pivotal question in the case and we think the instruction was correctly given.

Some twenty-five special interrogatories were prepared by the appellant which it asks to have submitted to the jury. The court refused the motion to submit, and such refusal is urged here as reversible error. These interrogatories, like the instructions, are to a great extent repetitions in substance, presented in different language. But, if they were not, this court has held that the question of submission of special interrogatories is addressed to the discretion of the trial court and will not be reviewed here. *Pencil v. Home Ins. Co.*, 3 Wash. 485 (28 Pac. 1031).

The judgment will be affirmed.

Scott, Gordon and Anders, JJ., concur.

Hoyt, C. J., dissents.