[No. 11686.   Department One.   March 28, 1914.]

WASHINGTON TRUST COMPANY, *Appellant,* v. THOMAS KEYES, *Respondent,* McCARTHY AUTO COMPANY *et al.,* *Defendants.*[1]

EVIDENCE—VARYING WRITING—CONSIDERATION FOR CONTRACT—ADMISSIBILITY. A written agreement that the promissory note of a sales agent for the price of an automobile, given that he might remove the automobile from the county, might be discharged by a return of the automobile if it was not sold, is not, strictly, collateral to the note, but a part of the consideration, and is not inadmissible as contradicting the note.

EVIDENCE—WRITING—BEST AND SECONDARY. Where a written contract had been accidentally mutilated and was illegible, parol evidence of its contents is admissible.

BILLS AND NOTES—BONA FIDE PURCHASER—NOTICE OF CONDITION. The indorsee of a note, given by a sales agent for the price of an automobile that he might take the automobile from the county, under an agreement that the note could be discharged by a return of the automobile, is not a holder in due course, although it acquired the same before return of the automobile, where it not only had notice of the condition, but the agreement was made at its instance to protect its interest in a mortgage upon the automobile.

APPEAL—REVIEW—VERDICT. A verdict upon sharply conflicting evidence on every question of fact cannot be disturbed on appeal, where the trial court refused a new trial.

BILLS AND NOTES—DISCHARGE—EVIDENCE—ADMISSIBILITY. Upon a defense that a promissory note was given under an agreement to discharge the note upon return of an automobile, evidence that plaintiff's cashier, when the automobile was returned, promised to cancel and mail the note, is admissible as to plaintiff's original connection with and understanding of the agreement.

APPEAL — REVIEW — INSTRUCTIONS — REQUESTS. Error cannot be predicated upon the failure to limit the consideration of evidence to a specified purpose, in the absence of any request for such an instruction.

Appeal from a judgment of the superior court for Spokane county, Webster J., entered June 9, 1913, upon the

[1]Reported in 139 Pac. 638.

verdict of a jury rendered in favor of the defendant, in an action on a promissory note. Affirmed.

*Danson, Williams & Danson* (*George D. Lantz*, of counsel), for appellant.

*J. M. McCroskey* and *Voorhees & Canfield*, for respondent.

Ellis, J.—The plaintiff brought this action to recover on a promissory note, against the defendants Keyes, as maker, L. D. McCarthy Auto Company, payee and endorser, and L. D. McCarthy personally, as endorser. No question being presented as to the pleadings, the character of the defense, so far as material to the questions presented on this appeal, will sufficiently appear from the following resume of the evidence adduced in its support.

The defendant Keyes testified, in substance, that he had formerly acted as agent in Whitman county for the defendant Auto Company, whose place of business was in Spokane county, in selling automobiles, but had ceased so to act; that he purchased an automobile from defendant company and went to the plaintiff's bank to pay his note given for the purchase price, and, while there, the plaintiff's cashier told him that the plaintiff was interested in the automobile company, and suggested that the defendant Keyes again act as agent for the Auto Company in Whitman county; that the defendant demurred because he would be required to give a note for the price of each automobile taken out of Spokane county; that the cashier said, in effect, that the plaintiff could not permit automobiles to be taken out of the county without a note as security either for the payment of the price or a return of the automobile, and suggested that an arrangement with the automobile company be made on that basis. The defendant then suggested to the cashier that the plaintiff give him a writing to that effect, but the cashier told him that would be unnecessary if, when he gave a note to the Auto Company, he would take a writing to the effect that the note should be discharged by payment of the pur-

chase price, in case of sale, or by a return of the automobile, in case of a failure to sell it; that the defendant Keyes then brought the defendant McCarthy, who was manager of the automobile company, to the bank, and the arrangement above outlined was again talked over by these two with the cashier, and the defendant Keyes then agreed to act as agent for the automobile company on that basis; that sometime afterwards the car in question was taken by the defendant Keyes to Whitman county for the purpose of sale under this agreement; that, when he took the car, he gave his note for $1,000, representing the amount which would come to the automobile company in case of a sale of the automobile at an agreed price, after deducting the commission of the defendant Keyes for making the sale, and other commissions which he had already earned; that, at the time, and as a part of the same transaction, he received from the Auto Company an agreement which was written in pencil on the back of one of the business cards of the company, as to the contents of which he testified as follows:

"May 17th, 1912.

"It is understood and agreed that Thomas Keyes, in giving his note for one thousand dollars—I don't know whether it is dated then or not—for one thousand dollars as security for a cross-country Rambler, serial number 28447, that said note is to be paid out of the proceeds of the sale of this car, or in case it is not sold, car to be returned to L. D. McCarthy and note returned to Thomas Keyes, as near as I can get at it from memory."

The card, with the agreement written on the back, signed by the Auto Company, was introduced in evidence, but had been so mutilated by becoming soaked with oil, which was afterwards removed by gasoline, as to make much of the writing illegible. So much, however, as can be deciphered with the aid of a reading glass corresponds with the defendant's testimony as to its original purport. He further testified, in effect, that after keeping the car for some time, he received a request from the defendant McCarthy to return

it; that he brought it back to Spokane, arriving there about five o'clock in the afternoon; that the plaintiff's bank was closed, but he saw the cashier at the entrance, told him that he was returning the car, and wanted his note; that the cashier told him to return the car to the Auto Company, and the note would be cancelled and mailed to the defendant Keyes; that he, Keyes, then returned the car to the Auto Company, which, the evidence shows, retained it and subsequently sold it to another person.

It is admitted that the note was never cancelled or returned to the defendant Keyes. It is also admitted that the plaintiff had extended a line of credit to the automobile company, taking as security mortgages on the company's automobiles. The testimony in rebuttal on behalf of the plaintiff did not controvert the agreement testified to by Keyes as to cars taken by him for the purpose of sale, but tended to show that this particular note was given by Keyes in exchange for another note given by one Herron, to whom an automobile had been sold. Both plaintiff's cashier and the defendant McCarthy contradicted nearly all of the testimony of the defendant Keyes touching the note in suit. McCarthy testified that the memorandum was given in connection with another note. Upon this conflicting evidence, the cause was submitted to the jury. A verdict was returned in favor of the defendant Keyes. The plaintiff moved for judgment notwithstanding the verdict, and, in the alternative, for a new trial. Both motions were denied. Judgment was entered in favor of the defendant Keyes for costs. Plaintiff appeals.

The appellant claims (1) that the agreement to surrender the note on return of the automobile was a collateral agreement, hence could not be shown as a defense; (2) that the collateral agreement was executory, and even conceding that the plaintiff had notice of its existence, it could not affect the plaintiff's rights as a purchaser for value, since it took the note prior to a breach of the executory agreement; (3) that,

in any event, the evidence was insufficient to sustain the verdict; (4) that other evidence was erroneously admitted.

I.  Under the first head, the appellant contends that, even as between the maker and the payee of a note, a collateral agreement exempting the maker from liability would be inadmissible as a defense.  It is claimed that the following decisions of this court sustain that view: *Bryan v. Duff*, 12 Wash. 233, 40 Pac. 936, 50 Am. St. 889; *Anderson v. Mitchell*, 51 Wash. 265, 98 Pac. 751; *Pitt v. Little*, 58 Wash. 355, 108 Pac. 941; *Aurora Land Co. v. Keevan*, 67 Wash. 305, 121 Pac. 469.

An examination of those cases, however, discloses the fact that in none of them did the court go further than to recognize the general rule, not peculiar to negotiable instruments, but applicable to all written contracts, that, in the absence of fraud or mistake, parol testimony is inadmissible to establish a collateral agreement varying, contradicting, or annulling the terms of an unambiguous written contract complete upon its face.  Some of these decisions contain language which, standing alone, might be construed as sustaining the appellant's contention; but, when applied to the facts with reference to which the language was used, they can have no such effect.  In some of these cases, the collateral agreement asserted would have absolutely annulled the note at its inception, and, in each, the effort was made to defeat payment of the note by proof of a collateral, parol agreement, either relieving the maker from or qualifying his liability.  Here the agreement was not, in a strict sense, collateral, but was a part of the very transaction which constituted the consideration of the note.  It did not nullify the note at its inception, but merely provided for a mode of discharge alternative to payment in money.  It did not rest in parol, but was in writing.  It is true that the writing had been accidentally mutilated so as to be partly illegible.  Had this writing been entirely legible, there could be no question as to its proper

3—79 WASH.

admission to prove the purpose of the note as between the original parties. Being admissible, parol proof of its original contents, with an explanation of its accidental mutilation, would have been clearly admissible as between those parties. If, therefore, the plaintiff was not a holder of the note in due course, the evidence of this agreement was admissible as against it.

II. The appellant contends that, even though it had notice of the conditions upon which the note was given, as set out in the agreement, that agreement being executory, and the plaintiff taking the note prior to the breach of that agreement by the payee, its subsequent breach by the payee would not affect the rights of the appellant as an innocent holder, nor constitute a defense to the note in its hands. If the respondent's testimony had gone no further than to establish notice to the appellant of the existence of the original agreement, this contention would be sound under our holding in *Moyses v. Bell*, 62 Wash. 534, 114 Pac. 193. We there held that knowledge by an indorsee of a note that it had been given in consideration of an executory contract of the payee, which the payee afterwards failed to perform, would not deprive the indorsee of his character of *bona fide* holder in due course, unless, prior to its assignment to him, he had notice of the breach of the executory contract. In the present case, however, the respondent's testimony went further. It showed that the appellant not only had notice of the terms upon which the note was given, but that both the note and the agreement were made at its instance and for its benefit. It is admitted that it held a mortgage on the automobile, and the respondent's testimony tended to show that the appellant would not permit the automobile to be taken out of Spokane county without having the note as security, and suggested that a writing, just such as that which respondent testified was taken in this instance, should be given by the Auto Company' in connection with each note given by the respondent, on removing an automobile from the county. In other words,

the respondent's testimony tended to show that the agreement that the note might be discharged, either by its payment or by a return of the automobile, and the taking of the note on that condition was authorized by the appellant and was made for the sole purpose of protecting its then subsisting interest in the very subject-matter of the transaction.

The appellant's claim as an innocent holder is, therefore, defeated, not by mere notice of the agreement upon which the note was given, but by its interest in the transaction at the time the note was given, and its prior consent to the agreement. It seems to us that this testimony, if believed by the jury, was sufficient to clearly distinguish this case from those cited by appellant in this connection. *Moyses v. Bell, supra; Thompson v. Love,* 61 Ark. 81, 32 S. W. 65; *Jennings v. Todd,* 118 Mo. 296, 24 S. W. 148, 40 Am. St. 373. We are constrained to hold that the mutilated agreement with the testimony as to its original contents was competent evidence to the fact that the appellant was not a holder of the note in due course.

III. The respondent's evidence being competent on the issue to which it was directed, it follows that its weight was for the jury. While it is true that, on every contested question of fact, the evidence of the appellant was in sharp conflict with that of the respondent, we cannot say, as a matter of law, that the respondent's evidence was insufficient. The trial court having refused a new trial, we cannot disturb the verdict. *Stanley v. Stanley,* 32 Wash. 489, 73 Pac. 596; *Norman v. Bellingham,* 46 Wash. 205, 89 Pac. 559; *Strandell v. Moran,* 49 Wash. 533, 95 Pac. 1106; *Williams v. Bartz,* 52 Wash. 153, 100 Pac. 186.

IV. The appellant has assigned as error the admission of certain evidence, only one item of which we deem it necessary to notice. It is claimed that, inasmuch as the court, by its instructions, did not submit to the jury the issue as to whether or not, when the automobile was returned, the cashier of the bank then made a promise to cancel and return to the re-

spondent his note, therefore, the respondent's testimony to that effect was prejudicial. We find no merit in this. Though the respondent did not request that the evidence of this promise be submitted to the jury as a separate defense, it was none the less admissible as tending to prove the appellant's connection with the original transaction and its prior understanding that a return of the car should discharge the note. The failure of the court to submit this evidence to the jury as a separate defense was certainly not prejudicial to the appellant. The appellant, having failed to request an instruction limiting the consideration of this evidence to the sole question of notice, cannot now complain that no such instruction was given.

We find no error, either in the instructions, or in the admission of evidence, warranting a reversal.

The judgment is affirmed.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.